UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
STATE NATIONAL INSURANCE COMPANY,    Civil Case No.: _____

                Plaintiff,    **COMPLAINT FOR**
                                                                    **DECLARATORY**
       v.    **JUDGMENT WITH**
                                                                    **JURY DEMAND**

ACCIDENT FUND INSURANCE COMPANY
OF AMERICA,

                Defendant.
------------------------------------------------------------------------x

       Plaintiff, STATE NATIONAL INSURANCE COMPANY ("SNIC"), by and through its attorneys, STEWART SMITH, allege the following as their Complaint for Declaratory Judgment against defendant ACCIDENT FUND INSURANCE COMPANY OF AMERICA ("Accident Fund"):

## Nature Of The Action

       1.      This is an action for declaratory relief and contribution arising from the breach of Accident Fund's obligations to provide additional insured coverage under a general liability insurance policy and an excess liability policy that were issued to non-party Moncon, Inc. ("Moncon"), in connection with a construction site accident involving a Moncon employee, non-party Neuman Nilver Colunche Montenegro, and his subsequent lawsuit.

       2.      Moncon is a subcontractor that contracted to perform certain construction work at a project located at 450 11th Avenue, in New York, New York (the "Project").

       3.      In its subcontract with Atria Builders, LLC ("Atria"), Moncon agreed to provide primary and non-contributory additional insured coverage for non-parties Atria and 37-11 Owner, LLC ("Owner"), both of which were subsequently sued by Moncon's employee, Mr. Montenegro, who was allegedly injured while working at the Project.

4. A third-party complaint against Moncon in the *Montenegro* lawsuit alleges that any alleged liability of Atria and Owner to Mr. Montenegro derives solely from Moncon's active negligence.

5. Accident Fund issued a commercial general liability ("CGL") policy and a commercial excess liability policy to Moncon (collectively, the "Accident Fund Policies"), which were both in effect on the date of Mr. Montenegro's alleged injury.

6. Accident Fund is obligated to provide additional insured coverage to Atria and Owner in connection with the *Montenegro* lawsuit, but it has breached its policies, it has failed to defend Atria and Owner in that lawsuit, and it has failed to acknowledge that Atria and Owner are additional insureds under its insurance policies in connection with the *Montenegro* lawsuit.

7. Additionally, as the primary insurer, Accident Fund is obligated to defend and indemnify Atria and Owner in the *Montenegro* lawsuit, but it has breached its obligations and failed to do so.

8. Critically, Accident Fund ***never*** formally responded to the March 10, 2022 tender for additional insured coverage for Atria and Owner, or to any subsequent re-tenders, including a May 3, 2022 follow-up tender.

9. Therefore, Accident Fund has violated N.Y. Insurance Law § 3420(d)(2), and it is therefore estopped from relying upon any policy exclusions to disclaim coverage under its insurance policies.

10. SNIC issued a CGL policy to its named insureds, Atria and Owner, and SNIC has been providing a defense to Atria and Owner in the *Montenegro* lawsuit, despite Accident Fund's primary and non-contributory obligation to do so.

11. SNIC seeks a declaration pursuant to 28 U.S.C. § 2201, *et seq.*, declaring (1) that Atria and Owner are additional insureds under the Accident Fund Policies and that Accident Fund is required to defend and indemnify Atria and Owner on a primary and non-contributory basis in the *Montenegro* lawsuit; (2) that Accident Fund is required to pay any verdict, judgment or settlement in the *Montenegro* lawsuit on Atria's and Owner's behalf on a primary and non-contributory basis; and (3) that Accident Fund is required to reimburse SNIC for all costs that it has incurred in defending Atria and Owner in the *Montenegro* lawsuit, from the date of first tender of the *Montenegro* lawsuit to the present, including interest from the date of SNIC's payment of each invoice, at the statutory rate of nine percent (9%) per year.

## The Parties

12. Plaintiff, SNIC, is and at all pertinent times was a foreign business corporation, duly organized under the laws of the State of Texas, with its principal place of business located at 1900 L Don Dodson Drive, Bedford, Texas 76021. SNIC is authorized to conduct, and does conduct, business in the State of New York.

13. SNIC issued a CGL policy to Atria and Owner in New York, and it is currently defending Atria and Owner in the *Montenegro* lawsuit.

14. Defendant, Accident Fund, is and at all pertinent times was a foreign business corporation, duly organized under the laws of the State of Michigan, with its principal place of business located in Lansing, Michigan. Accident Fund is authorized to conduct, and does conduct, business in New York.

15. Accident Fund issued a CGL policy and a commercial excess liability policy to Moncon.

**Jurisdiction And Venue**

16. Subject matter jurisdiction is based upon 28 U.S.C.A. § 1332 and 28 U.S.C.A. § 2201, because the action involves citizens of different states and the amount in controversy exceeds the sum of $75,000. An actual controversy exists between the parties regarding their respective rights and obligations under the relevant insurance policies.

17. Personal jurisdiction over Accident Fund is proper, in that it transacts and/or conducts insurance business in the State of New York.

18. Venue is proper under 28 U.S.C.A. § 1391, because the accident alleged in the *Montenegro* lawsuit giving rise to the instant insurance coverage lawsuit took place within this district.

**The Underlying *Montengro* Lawsuit**

19. SNIC seeks a declaratory judgment concerning Accident Fund's coverage obligations with respect to Mr. Montenegro's lawsuit, captioned *Neuman Nilver Colunche Montenegro v. Atria Builders, LLC, et al.*, filed at Index No. 804387/2021, in the Supreme Court of the State of New York in Bronx County (the "Lawsuit"). *See Montenegro* Verified Complaint [NYSCEF No. 1] (true and correct copy attached as **Exhibit A**).

20. In the Lawsuit, Mr. Montenegro alleges that he sustained serious and permanent injuries on or about December 15, 2020, when he was caused to trip and fall on debris because of the negligence of, *inter alia*, Atria and Owner, who allegedly had actual and constructive notice of the dangerous and defective conditions and practices, while he was working at the Project, located at 450 11th Avenue, in New York, New York. *See* **Exhibit A** (*Montenegro* Complaint), ¶¶ 19, 132-135(a)-(t).

21. At the time of his alleged accident, Mr. Montenegro was performing construction work at the Project in the course of his employment with Moncon, which had subcontracted with Atria to perform work at the Project.  *See* **Exhibit A** (*Montenegro* Complaint), ¶¶ 130-132.

22. On or about May 26, 2022, Atria and Owner filed a third-party complaint in the Lawsuit against Moncon, alleging, in pertinent part, that any alleged liability of Atria and Owner to Mr. Montenegro "shall derive solely from the active negligence of Moncon."  *See* Third-Party Complaint (true and correct copy attached as **Exhibit B**), ¶ 17.

23. Mr. Montenegro testified that at the time of his accident, he was working on the eighth floor, carrying by hand and on his shoulder, a very heavy 2 feet wide by 8 feet high metal and plywood form, and while his view of the floor was blocked by his arm and the form, he stepped on a white tube (approximately 2 to 4 feet long, and the width of a #5 sized rebar) and fell forward. *See* Deposition of Neuman Nilver Colunche Montenegro (true and correct copy of pertinent excerpts attached as **Exhibit C**), at 37:11-38:22, 39:3-17, 45:18-22, 69:23-70:11, 72:21-73:7, 74:4-23, 75:22-76:16, 85:15-21, 89:14-90:4.

24. Mr. Montenegro also testified that the tube that he fell on was used with the forms (like the one that he was carrying), in the cement wall work that Moncon performed.  *See* **Exhibit C** (Montenegro Deposition), at 91:14-19, 92:18-93:7, 110:4-24.

25. In his deposition, Moncon's concrete safety manager, Pasquale Caccamo, testified that Mr. Montenegro's accident occurred while Moncon was still in the process of building the eighth floor on which he was working, and Moncon had not yet turned over the floor to Atria. Deposition of Moncon's Pasquale Caccamo (true and correct copy of pertinent excerpts attached as **Exhibit D**), at 11:19-25, 59:1-7, 88:24-89:6, 89:12-15.

26. Moncon's Mr. Caccamo also testified that while Moncon is in control of the floor (*i.e.*, before it is turned over to Atria), Moncon – and not Atria – is responsible for all housekeeping, including ensuring that there is a clear 3-foot egress path in between its stored materials. *See* **Exhibit D** (Moncon Deposition), at 51:8-24, 59:18-60:1, 60:11-61:3, 99:11-17.

27. Moncon's Mr. Caccamo also testified that based upon Mr. Montenegro's description of his accident, he slipped on PVC piping that Moncon (and Mr. Montenegro) used in their work on the Project; that the PVC pipes would be placed around the floor where the panels need to be installed; and that only Moncon was responsible for the storage and securing of the PVC piping. *See* **Exhibit D** (Moncon Deposition), at 72:5-73:17, 87:16-88:2.

### The Atria-Moncon Subcontract

28. Prior to Mr. Montenegro's alleged accident, on or about May 13, 2020 and May 18, 2020, contractor Atria and subcontractor Moncon each executed the Atria-Moncon Subcontract (the "Subcontract") for Moncon to perform certain Concrete Superstructure Work at the Project. *See* Subcontract (true and correct copy attached as **Exhibit E**).

**Primary and Non-Contributory Additional Insured Coverage for Atria and Owner**

29. Under the Subcontract, Moncon agreed and was required to provide additional insured coverage for both Atria and Owner, on a primary and non-contributory basis, specifically as follows:

### Insurance Requirements
### Marriott Hotel Project

[Moncon] shall procure and maintain the following minimum insurance coverages in addition to any additional insurance policies necessary to obtain required permits or otherwise comply with applicable law, ordinances, or regulations regarding the performance of work. The following limits or specific coverages do not restrict or limit any contractual obligation between the parties as may be defined elsewhere.

III)    COMMERCIAL GENERAL LIABILITY:

   Commercial General Liability For 1988 ISO Occurrence Form or equivalent (identify form # and edition date on certificate).

LIMITS:
$2,000,000 - Each occurrence for Bodily Injury and Property Damage
$2,000,000 - Products, Completed Operations Aggregate Limit
$2,000,000 - General Aggregate* Limit (other than Products/Completed Operations)
$2,000,000 - Personal Injury Liability
  * *General Aggregate MUST include per project endorsement (must evidence on certificate).*

\* \* \*

VII) ADDITIONAL INSURED ENDORSEMENTS

  Insurance policies specified in III … above shall be endorsed to name Owner, its directors, officers, employees, subsidiaries, affiliates, and contractor as additional insureds, and shall stipulate that this insurance is primary, that any other insurance or self-insurance maintained by Owner and Contractor shall be excess only and shall not be called upon to contribute with this insurance. ISO Additional Insured Endorsement form number CG2010 1185 under GL. Contractors Form B must be utilized and accompany the Certificate of Insurance.

\* \* \*

Entities to Be Listed as Additionally Insured

1. **37-11 Owner, LLC**
   158-13 72nd Avenue
   Suite 2B
   Flushing, NY 11365

2. **Atria Builders, LLC**
   158-13 72nd Avenue
   Suite 2D
   Flushing, NY 11365

*See* **Exhibit E** (Subcontract), at 53-54.

30. At all pertinent times, it was Moncon's, Atria's and Owner's intention that Atria and Owner would be included as additional insureds under any insurance policies issued to Moncon; that such additional insured coverage would be primary and non-contributory; and that Atria's and Owner's own insurance would be excess to Moncon's insurance.

**Moncon's Indemnification Obligations**

31. Under the Subcontract, Moncon agreed and was required to undertake certain indemnification obligations for claims attributable to bodily injury, but only to the extent ***arising***

7

*out of Moncon's and/or its employees' performance of the Work or negligent acts or omissions*, or ***an accident happening where Moncon's Work is being performed***, specifically as follows:

> **ARTICLE 9: Indemnification and Insurance.**
>
> Indemnification
> A.   To the extent permitted by law, [Moncon] shall indemnify, defend, save and hold the Owner, [Atria] … their respective partners, parents, affiliates, agents, officers, employees and anyone else acting for or on behalf of any of them (herein collectively called "Indemnitees") harmless from and against all liability, damage, loss, claims, demands and actions of any nature whatsoever **which arise out of or are connected with, or are claimed to arise out of or be connected with**:
>
> 1. **The performance of Work by [Moncon], or any act or omission of [Moncon]**;
>
> 2. Any accident or occurrence which happens, or is alleged to have happened, in or about the place where such Work is being performed or in the vicinity thereof (a) while [Moncon] is performing the Work, either directly or indirectly through a sub-subcontractor or material agreement, or (b) while any of [Moncon's] property, equipment or personnel are in or about such place or the vicinity thereof by reason of or as a result of the performance of the Work; or
>
> 3. The use, misuse, erection, maintenance, operation or failure of any machinery or equipment (including, but not limited to, scaffolds, derricks, ladders, hoists, rigging supports, etc.) whether or not such machinery or equipment was furnished, rented or loaned by the Owner or [Atria] or their officers, employees, agents, servants or others to [Moncon]. Without limiting the generality of the foregoing, such defense and indemnity includes all liability, damages, loss, claims, demands and actions on account of personal injury, death or property loss to any Indemnitee, to any of Indemnitees' employees, agents, contractors or Subcontractors, licensees or invitees, or other contractor or Subcontractor, their employees, agents, Subcontractors, licensees or invitees or to any other persons, whether based upon, or claimed to be based upon, statutory (including without limiting the generality of the foregoing, Worker's compensation), contractual, tort or other liability of any Indemnitee, contractor, Subcontractor or any other persons. ….

*See* **Exhibit E** (Subcontract), at 22-23, ARTICLE 9, Indemnification (emphasis added).

32.   Under the Subcontract, Moncon also agreed that it would "ensure that all places where members of the project work force are directed or permitted to perform work shall be so constructed, equipped, arranged, operated, and conducted as to provide reasonable and adequate protection to the lives, health and safety of employees and others," and that it would "not direct, or permit and employee to work under conditions which are not in compliance with or which are

8

prohibited by any applicable federal, state, and local safety standards, regulations, rules or guidelines." *See* **Exhibit E** (Subcontract), at 28, ¶¶ 3-4.

33. Under the Subcontract, Moncon also agreed to maintain the premises and job site "in a neat and orderly condition and kept free from accumulation of waste materials and rubbish during the entire construction period." *See* **Exhibit E** (Subcontract), at 30, ¶ Q.

## THE INSURANCE POLICIES

### The Accident Fund CGL Policy

34. Accident Fund issued CGL insurance policy number FTL 100026-01 to Moncon, for the policy period from October 22, 2020 to October 22, 2021 (the "CGL Policy"). *See* Moncon CGL Policy (true and correct copy attached as **Exhibit F**).

35. The CGL Policy has limits of insurance in the amount of $2 million per occurrence, and $4 million general aggregate. *See* **Exhibit F** (CGL Policy), CGL Policy Declarations, at 2, Liability Coverages.

36. The CGL Policy was in force and effect on December 15, 2020, the date of the accident alleged in the *Montenegro* Lawsuit. *See* **Exhibit F** (CGL Policy), CGL Policy Declarations, at 1, Policy Period.

37. The CGL Policy contains an Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization endorsement that provides additional insured coverage to additional insured persons or organizations where required by written contract, signed and executed prior to a loss, for bodily injury "caused, in whole or in part, by [Moncon's] acts or omissions, or the acts or omissions of those acting on [Moncon's] behalf, in the performance of [Moncon's] ongoing operations for the additional insured(s)." *See* **Exhibit F** (CGL Policy). *See*

*also* CGL Policy Additional Insured Endorsements (true and correct copies attached separately for ease of reference as **Exhibit G**).

38. As noted above, Moncon agreed in writing in a written subcontract that its CGL policy shall name Atria and Owner as additional insureds on a primary and non-contributory basis. *See supra*, ¶¶ 30-31.

39. As also noted above, it is alleged in the Lawsuit that Moncon's active negligence caused Mr. Montenegro's alleged injuries. *See* **Exhibit B** (Third-Party Complaint in Lawsuit), ¶ 17. *See also* This DJ Complaint, *supra*, at ¶¶ 23-27 & **Exhibits C & D** (deposition testimony in Lawsuit).

40. Because Moncon agreed in the Subcontract to provide additional insured coverage for Atria and Owner, the CGL Policy provides primary and non-contributory additional insured coverage for Atria and Owner, both of whom were sued by the plaintiff in the Lawsuit.

41. Therefore, Atria and Owner are additional insureds under the CGL Policy in connection with Moncon's employee's alleged injury in the Lawsuit.

42. Likewise, the CGL Policy also provides coverage for Atria's and Owner's tort liability that was assumed by Moncon in the indemnification provision in its Subcontract with Atria, which qualifies as an "insured contract" under the CGL Policy. *See supra*, ¶ 31. *See also* **Exhibit D** (CGL Policy) and **Exhibit E** (Subcontract), at 22-23, ARTICLE 9, Indemnification.

### The Accident Fund Excess Policy

43. Accident Fund also issued commercial excess liability policy number FTX1000005-00 to Moncon for the policy period from October 22, 2020 to October 22, 2021 (the "Excess Policy"). *See* Excess Policy (true and correct copy attached as **Exhibit H**).

44. The Excess Policy was in force and effect on December 15, 2020, the date of the accident alleged in the *Montenegro* Lawsuit. *See* **Exhibit H** (Excess Policy), Excess Policy Declarations, at 1, Policy Period.

45. The Excess Policy has limits of insurance in the amount of $3 million per occurrence, and $3 million general aggregate. *See* **Exhibit H** (Excess Policy), Excess Policy Declarations, at 2, Excess Liability Limits.

46. Plaintiff SNIC issued project-specific CGL policy number PSI 1800108 to Atria and Owner, for the policy period from October 8, 2018 to October 8, 2021, or until end of project, whichever comes first.

47. Because Accident Fund breached its obligations under the Accident Fund Policies, SNIC has been incurring costs defending Atria and Owner in the *Montenegro* Lawsuit.

## Tenders To Accident Fund

48. By letter dated March 10, 2022, Atria's and Owner's defense counsel first tendered the claim to Accident Fund, seeking defense, indemnification and additional insured status under the Accident Fund Policies. *See* March 10, 2022 tender letter (true and correct copy attached as **Exhibit I**).

49. Copies of the complaint in the Lawsuit and the Subcontract were also sent to Accident Fund with the March 10, 2022 tender letter. *See* **Exhibit I** (March 10, 2022 tender letter).

50. Defense counsel followed up by numerous emails, beginning on May 3, 2022, was advised on May 4, 2022 that Accident Fund assigned claim number FTL12680 to the claim, and followed up for a formal response from Accident Fund and/or its coverage counsel numerous times thereafter. *See* numerous emails from Douglas Domsky, Esquire to Accident Fund and/or Michael Burke (copy attached as **Exhibit J**).

51. After the third-party complaint was filed against Moncon in the Lawsuit, and after counsel for Moncon entered an appearance, defense counsel for Atria and Owner has followed up numerous times with Moncon's counsel about the lack of response by Accident Fund to the tenders, but to date, no formal response to the March 10, 2022 tender and subsequent tenders has ever been received. *See* **Exhibit J** (follow-up tender and follow-up emails)

52. As of the date of the filing of this complaint in this declaratory judgment action, Accident Fund has failed to formally respond to – or even formally acknowledge – Atria's and Owner's tenders for additional insured coverage and indemnification.

53. Accident Fund has breached its contractual obligations by failing to provide additional insured coverage and defense and indemnification for Atria and Owner in the Lawsuit.

54. Accident Fund has violated NY Insurance Law § 3420(d)(2), by failing to respond to the tender letter for the Lawsuit within thirty (30) days of receipt, and it has thereby waived any exclusions that may otherwise have applied to preclude coverage for Atria and Owner under the Accident Fund Policies.

55. SNIC has no adequate remedy at law, and it respectfully requests a declaration of its rights and those of Accident Fund, including, but not limited to, a declaration (1) that Atria and Owner are additional insureds under the Accident Fund Policies and that Accident Fund is required to defend and indemnify Atria and Owner on a primary, non-contributory basis in the Lawsuit; (2) that Accident Fund is required to pay any verdict, judgment or settlement in the Lawsuit on Atria's and Owner's behalf on a primary and non-contributory basis; and (3) that Accident Fund is required to reimburse SNIC for all costs that it has incurred in defending Atria and Owner in the Lawsuit, from the date of first tender of the claim to Accident Fund (*i.e.*, from March 10, 2022) to

the present, including interest from the date of SNIC's payment of each invoice, at the statutory rate of nine percent (9%) per year.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment – Duty to Defend Additional Insureds Atria and Owner in the Lawsuit)

56. SNIC repeats and realleges each and every allegation made in paragraphs designated "1" through "55" inclusive, with the same force and effect as if set forth herein.

57. Atria and Owner qualify as additional insureds under the Accident Fund Policies.

58. The allegations in the Lawsuit against Atria and Owner are covered within the terms of the Accident Fund Policies.

59. Pursuant to the terms of the Accident Fund Policies and under the application of New York law, Accident Fund has an obligation to defend Atria and Owner in the Lawsuit, on a primary and non-contributory basis, as additional insureds under the Accident Fund Policies.

60. Pursuant to the terms of the Accident Fund Policies and under the application of New York law, Accident Fund has a separate obligation to defend Atria and Owner in the Lawsuit because Moncon assumed the tort liability of Atria and Owner in the Subcontract, which is an "insured contract" under the Accident Fund Policies.

61. Atria and Owner timely demanded that Accident Fund defend and indemnify them against the claims asserted against them in the Lawsuit, on a primary, non-contributory basis.

62. Accident Fund has failed, and continues to fail, to defend Atria and Owner in the Lawsuit.

63. As a direct result of Accident Fund's failure to defend Atria and Owner in the Lawsuit on a primary and non-contributory basis, SNIC has incurred costs defending them in the Lawsuit, when it was Accident Fund's primary and non-contributory obligation to do so.

64. Based on the foregoing, SNIC respectfully requests a judgment declaring that Atria and Owner are additional insureds under the CGL Policy, and requiring Accident Fund to defend Atria and Owner in the Lawsuit, on a primary and non-contributory basis.

### AS AND FOR A SECOND CAUSE OF ACTION
**(Declaratory Judgment – Duty to Indemnify for the Lawsuit)**

65. SNIC repeats and realleges each and every allegation made in paragraphs designated "1" through "64" inclusive, with the same force and effect as if set forth herein.

66. Pursuant to the terms of the Accident Fund Policies and under the application of New York law, Accident Fund has an obligation to indemnify Atria and Owner in the Lawsuit, on a primary and non-contributory basis, as additional insureds under the Accident Fund Policies, for all amounts for which Atria and Owner become legally obligated to pay as damages because of bodily injury in connection with the Lawsuit.

67. Pursuant to the terms of the Accident Fund Policies and under the application of New York law, Accident Fund also has a separate obligation to indemnify Atria and Owner in the Lawsuit because Moncon assumed the tort liability of Atria and Owner in the Subcontract, which is an "insured contract" under the Accident Fund Policies.

68. Accident Fund has failed, and continues to fail, to defend Atria and Owner in the Lawsuit.

69. Based on the foregoing, SNIC respectfully requests a judgment declaring that Accident Fund is obligated to indemnify Atria and Owner in connection with the Lawsuit, on a primary and non-contributory basis and requiring that Accident Fund pay any verdict, judgment or settlement in the Lawsuit on Atria's and Owner's behalf, on a primary and non-contributory basis.

### AS AND FOR A THIRD CAUSE OF ACTION
#### (Declaratory Judgment – Reimbursement of Defense and Indemnity Costs for the Lawsuit)

70. SNIC repeats and realleges each and every allegation made in paragraphs designated "1" through "69" inclusive, with the same force and effect as if set forth herein.

71. Pursuant to the terms of the Accident Fund Policies and under the application of New York law, Accident Fund has an obligation to defend Atria and Owner in the Lawsuit, on a primary and non-contributory basis.

72. SNIC has incurred, and continues to incur, expenses including, but not limited to, attorneys' fees and other costs in connection with its defense of Atria and Owner in the Lawsuit, when it was Accident Fund's primary and non-contributory obligation to do so.

73. SNIC is entitled to reimbursement by Accident Fund of all of the attorneys' fees and other costs incurred in connection with the defense of Atria and Owner in the Lawsuit, from the date of first tender of the claim to Accident Fund (*i.e.*, from March 10, 2022), together with interest from the date of SNIC's payment of each invoice, at the statutory rate of nine percent (9%) per year.

74. Based on the foregoing, SNIC respectfully requests a judgment declaring that Accident Fund is obligated to reimburse SNIC for all of the attorneys' fees and costs incurred defending Atria and Owner in the Lawsuit, from the date of first tender of the claim to Accident Fund (*i.e.*, from March 10, 2022), together with interest from the date of payment of each invoice, at the statutory rate of nine percent (9%) per year.

### DEMAND FOR JURY TRIAL

75. SNIC hereby demands a trial by jury in this action for all issues triable by jury.

**WHEREFORE**, Plaintiff SNIC hereby demands judgment against Accident Fund, and a declaration as follows:

a. Declaring that Atria and Owner are additional insureds under the Accident Fund CGL Policy and the Accident Fund Excess Policy with respect to the Lawsuit;

b. Requiring that Accident Fund defend Atria and Owner in the Lawsuit, on a primary and non-contributory basis;

c. Requiring that Accident Fund indemnify Atria and Owner in connection with the Lawsuit, on a primary and non-contributory basis, by paying any verdict, judgment or settlement in the Lawsuit on Atria's and Owner's behalf; and

d. Requiring that Accident Fund reimburse SNIC for all of the attorneys' fees and costs that SNIC has incurred by defending Atria and Owner in the Lawsuit, from the date of first tender of the claim to Accident Fund (*i.e.*, from March 10, 2022), together with interest from the date of SNIC's payment of each invoice, at the statutory rate of nine percent (9%) per year;

e. Awarding SNIC the costs of suit incurred herein; and

f. Awarding SNIC such other and further relief as this Court deems just and proper.

Dated: March 28, 2024

                STEWART SMITH

By: _____/s/ *Nancy S. Portney*_____
Nancy S. Portney (NY Bar #5726880)
1177 Avenue of the Americas, 5th Fl.
New York, NY 10036
Phone: 484-344-5323
Fax:    484-534-9470
Email: nportney@StewartSmithLaw.com
*Attorneys for Plaintiff,*
*State National Insurance Company*